# EXHIBIT A

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO. 15-010165-CB Hon. Brian R. Sullivan |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-2447

| Plaintiff Michigan Warehousing Group LLC | v | Defendant City of Detroit |
|---|---|---|
| **Plaintiff's Attorney** Gregory D. Hanley, P-51204 32121 Woodward Ave Ste 300 Royal Oak, MI 48073-0999 | | **Defendant's Attorney** |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).  (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued 8/ 3/2015 | This summons expires 11/ 2/2015 | Court clerk File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**  *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*
[X] This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action   ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**
☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.
☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action   ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

9/11/15
_____
Date

_____
Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>15-010165-CB<br>Hon. Brian R. Sullivan |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-2447

| **Plaintiff**<br>Michigan Warehousing Group LLC | v | **Defendant**<br>City of Detroit |
|---|---|---|
| **Plaintiff's Attorney**<br>Gregory D. Hanley, P-51204<br>32121 Woodward Ave Ste 300<br>Royal Oak, MI 48073-0999 | | **Defendant's Attorney** |

**SUMMONS**   **NOTICE TO THE DEFENDANT:**   In the name of the people of the State of Michigan you are notified:

1.   You are being sued.
2.   **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).  (MCR 2.111[C])
3.   If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>8/ 3/2015 | This summons expires<br>11/ 2/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.  This document must be sealed by the seal of the court.

**COMPLAINT**   *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

[X] This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains   ☐ is no longer   pending.  The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

9/11/15

Date            Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

| STATE OF MICHIGAN THIRD JUDICIAL CIRCUIT WAYNE COUNTY | PROOF OF SERVICE | CASE NO. 15-010165-CB |
|---|---|---|

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

### CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**   **OR**   ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:          (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:          (notarization required)

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

_____ List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | |
|---|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                                          Date

My commission expires: _____   Signature: _____
                              Date                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                    Attachments

_____ on _____
                                              Day, date, time

_____ on behalf of _____

Signature

la'

| STATE OF MICHIGAN 3rd JUDICIAL CIRCUIT COUNTY OF WAYNE | VERIFICATION OF BUSINESS COURT ELIGIBILITY AND NOTICE OF ASSIGNMENT | CASE NO. 2015-010165-CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s) MICHIGAN WAREHOUSING GROUP, LLC, a Michigan limited liability company, and MIDWEST VALVE & FITTING COMPANY, a Michigan corporation<br><br>c/o Kickham Hanley PLLC 32121 Woodward Avenue, Suite 300 Royal Oak, MI 48073 (248) 544-1500 | v | Defendant(s) CITY OF DETROIT, a municipal corporation, by and through its WATER AND SEWERAGE DEPARTMENT<br><br>2 Woodward Avenue Detroit, MI 48226 |
|---|---|---|

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2)* and *MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O),MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

15-010165-CB
FILED IN MY OFFICE
WAYNE COUNTY CLERK
9/10/2015 1:42:37 PM
CATHY M. GARRETT

**[Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)]**

1. **Parties.** This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because:

   ☐ all of the parties are business enterprises

   ☑ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships

   ☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances

   ☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

   **AND**

2. **Actions.** This business or commercial action as defined by *MCL 600.8031(2)* involves,

   ☐ information technology, software, or website development, maintenance, or hosting

   ☐ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers

   ☐ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements

   ☐ commercial transaction, including commercial bank transactions

   ☐ business or commercial insurance policies

   ☐ commercial real property

   ☑ other type of business or commercial dispute (explain):

   Dispute concerning charges for Water and Sanitary Service including claims under Headlee Amendment to Michigan Constitution

| September 10, 2015 | | |
|---|---|---|
| Date | | |
| | Signature | |
| | Gregory D. Hanley | P51204 |
| | Name (type or print) | Bar no. |

STATE OF MICHIGAN
WAYNE COUNTY CIRCUIT COURT

MICHIGAN WAREHOUSING GROUP LLC,
a Michigan limited liability company, and
MIDWEST VALVE & FITTING COMPANY,
a Michigan corporation,

        Plaintiffs,

v.

CITY OF DETROIT,
a municipal corporation, by and through its
WATER AND SEWERAGE DEPARTMENT,

        Defendant.

Case No.  15-010165-CB
Hon.  Brian R. Sullivan

> **BUSINESS COURT VERIFICATION:**
> **Plaintiffs, by their counsel, verify that this**
> **action meets the statutory requirements to**
> **be assigned to the Business Court,**
> **pursuant to MCL 600.8031 and MCR**
> **2.112(O).**

Gregory D. Hanley (P51204)
Jamie K. Warrow (P61521)
Edward F. Kickham Jr. (P70332)
KICKHAM HANLEY PLLC
32121 Woodward Avenue, Suite 300
Royal Oak, MI 48073
(248) 544-1500
Attorneys for Plaintiffs

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

    Plaintiffs, Michigan Warehousing Group, LLC ("MWG") and Midwest Valve & Fitting Company, ("Midwest," collectively, with MWG, "Plaintiffs"), by their counsel, Kickham Hanley PLLC, individually and on behalf of a class of similarly situated class members, state the following for their First Amended Class Action Complaint against Defendant City of Detroit (the "City"):

## INTRODUCTION

    1.    Plaintiffs challenge one of the City's Retail Drainage Charges (the "Per-Acre Drainage Charge") imposed by the City's Water and Sewerage Department ("DWSD") upon Plaintiffs' property located in the City.  The City imposes the Per-Acre Drainage Charge for the alleged purpose of recovering the City's costs of managing "stormwater" – rainfall and snowmelt that enters the City's sewer system from the surface of the land.

2.      The Per-Acre Drainage Charge has been disproportionately foisted upon a particularized and narrow subset of the City's property owners (including Plaintiffs) – i.e., those owners of certain commercial properties that are being billed on an "acreage basis" based upon the "average imperviousness" of their properties (the "Per-Acre Properties"). Specifically, there are approximately 12,000 acres of private property that are subject to DWSD's "per acre" billing practice — out of a total of 89,343 acres in the entire City.

3.      DWSD persists in the exaction of the Per-Acre Drainage Charge from the owners of the Per-Acre Properties, even though "the nature of a stormwater management system, which benefits the public without providing any individualized, measurable benefit to individual property owners, does not lend itself to a system of funding based on user fees." *Dekalb County v. U.S.*, 108 Fed. Cl. 681 (U.S. Court of Claims 2013).

4.      The Per-Acre Drainage Charge constitutes a "tax" that has not been authorized by the City's voters in violation of Article 9, Section 31 of the Michigan Constitution of 1963 (the "Headlee Amendment") and is precisely the type of exaction the Michigan Supreme Court found was an unconstitutional tax in the seminal case of *Bolt v. City of Lansing*, 459 Mich. 152, 587 N.W.2d 264 (1998). The Per-Acre Drainage Charge also is an unlawful tax under MCL 141.91.

5.      The Per-Acre Drainage Charge — which is imposed to cover approximately $50 Million of the City's total $95 Million stormwater revenue requirement — imposes upon the owners of the Per-Acre Properties a disproportional financial burden of a governmental activity – stormwater disposal – which benefits the community at large.

6.      In this regard, the Per-Acre Drainage Charge is motivated by a revenue raising and not a regulatory purpose, and is grossly disproportionate to DWSD's actual costs of providing to Plaintiffs (and the other owners of the Per-Acre Properties) the purported benefits for which the Charges are ostensibly imposed upon them. Further, payment of the Per-Acre Drainage Charge is not voluntary because the amounts charged constitute a lien on the Per-Acre Properties and, if owners of the Per Acre Properties do not pay the Charges, they ultimately are added to the tax bills of the Properties.

- 2 -

7.      Moreover, the Per-Acre Drainage Charge violates Equal Protection Guarantees contained in the Michigan and U.S. Constitutions (*see* Mich. Constitution 1963, Article 1, § 2; U.S. Constitution Article 14, § 1), the authority stated in the City's own Charter (*see* § 7-1202, which requires that DWSD establish equitable water, drainage and sewerage service rates), and 42 U.S.C. § 1983. Here, the Drainage Charge is purportedly designed to ensure that "all customers pay their fair share of [stormwater] treatment costs." Yet, in imposing the Charge upon the Per-Acre Properties, the City has failed to classify the Per-Acre Properties based upon naturally distinguishing characteristics.

8.      Further, in this regard, by imposing the Per-Acre Drainage Charges upon the Per-Acre Properties, the City has failed to include all persons and entities of the same class, and has instead extended privileges to an arbitrary or unreasonable class which are denied to owners of the Per-Acre Properties. This is true for at least two reasons.

9.      First, the City is treating similarly-situated non-residential property owners differently by imposing Drainage Charges upon the owners of the Per-Acre Properties that are dramatically higher than those imposed by the City on the owners of all other commercial properties. The owners of the 12,000 commercial acres that are subject to the Per-Acre Drainage Charge are bearing the entire burden of DWSD's stormwater drainage treatment costs (approximately $50 Million) allocated to non-residential properties. Specifically, there are a total of 41,237 acres in the City that are designated for non-residential use. However, only the owners of the 12,000 acres are being assessed the Per-Acre Drainage Charge, while the owners of the remaining 29,237 non-residential acres not. Thus, owners of the Per-Acre Properties, including Plaintiffs, are being charged differently than similarly situated owners of non-residential property in Detroit. MWG in particular has incurred and paid a Per-Acre Drainage Charge that is as much as 31 times higher than the Drainage Charge incurred by other similarly-situated non-residential landowners.

10.     Second, the City also treats the owners of the Per-Acre Properties differently than it treats governmental units which incur Drainage Charges. Here, Plaintiffs and the majority of non-residential properties which incur Per-Acre Drainage Charges are being charged a rate of $518.11 per acre per month. This number is calculated by applying "average impervious factors" based upon

- 3 -

surveys of individual properties to a base cost rate to produce the monthly Drainage Charge. However, this Drainage Charge is nearly five times the amount being charged to the State of Michigan and Wayne County to manage the stormwater that enters the City's sewer system from federal, state and county roads and highways. Even though those governmental entities are similarly situated to the Per-Acre Properties, the City only charges these governmental entities $113.85 per acre, per month. Thus, owners of Per-Acre Properties, including Plaintiffs, are being charged at a highly inflated rate as compared to similarly situated owners of impervious property in Detroit.

## JURISDICTION AND VENUE

11.     Plaintiffs own commercial real property situated in the City of Detroit, Wayne County, Michigan, have been assessed, and paid, the Per-Acre Drainage Charge at issue in this case within one year of the filing of this action, and seek to act as class representatives for all similarly situated persons and entities.

12.     Defendant City is a Michigan home-rule city and is located in Wayne County, Michigan.

13.     Venue and jurisdiction are proper with this Court because all parties are present here and the actions which give rise to Plaintiffs' claims occurred in this County. Venue and jurisdiction also are proper with this Court under Article 9, Section 31 of the Michigan Constitution of 1963, and MCL 600.308a.

## GENERAL ALLEGATIONS

14.     Pursuant to its statutory authority, MCL 141.104, the City, through the Detroit Water and Sewerage Department ("DWSD"), maintains and operates a sewer system (the "Sewer System") to provide sanitary sewage treatment and disposal services to inhabitants of the City and to collect snowmelt and rainwater ("stormwater") runoff. DWSD's stormwater disposal services are of a general public nature and are furnished to the City at large. Because DWSD is a department of the City and not an independent legal entity, references in this Complaint to "DWSD" include the City.

15.     DWSD establishes the rates for the Drainage Charges from time to time through legislative action, and revenues generated by the Drainage Charges are deposited into the DWSD sewer fund. The City's current sewage and drainage rates are attached hereto as Exhibit A.

- 4 -

16.     Pursuant to the City's Charter, DWSD is required to establish equitable water, drainage and sewerage service rates. *See* 2012 Charter of the City of Detroit at Article 7, Chapter 12, § 7-1202.

17.     For the Per-Acre Properties, the Drainage Charge is based upon the number of acres owned multiplied by an amount which varies based upon the size of the impervious surface area of the property. *See e.g.* Exhibit B hereto (November 22, 2013 Memorandum authored by The Foster Group, including Illustration of the City's Drainage Charge Design).

18.     Plaintiff MWG currently owns commercial property (the "MWG Property") within the City's limits.

19.     Plaintiff Midwest currently owns commercial property (the "Midwest Property") within the City's limits.

## THE DISTINCTION BETWEEN
## SANITARY SEWAGE AND STORMWATER

20.     Like many older communities in Southeast Michigan, the City primarily has a combined sanitary and storm sewer system, which is a system that is designed to collect both (i) snowmelt and rainwater ("stormwater") runoff and (ii) domestic sewage and industrial wastewater ("sanitary sewage"), in the same pipe.

21.     Sanitary sewage – i.e., spent water from a municipal water supply system which may be a combination of liquid and water-carried wastes -- enters a combined system directly from residences, commercial buildings, industrial plants, institutions and other structures. Owners and/or occupiers of such structures which generate the sewage are "users" of the sanitary sewage disposal services provided by the City.

22.     Stormwater, in contrast, does not originate from any use of the water supply system or sanitary sewer system, and its presence in the combined system is wholly unrelated to the amount of tap water used, or sanitary sewage generated, by users of the system whose structures are physically connected to that system. Stormwater collects on both private and public land, roads and other physical, impervious surfaces during rainfall events, and the runoff enters the combined sewer system through catch-basins and other collection devices.

- 5 -

23.     Even though they have different origins, both sanitary sewage and stormwater collected in a combined sewer system need to be disposed of.  Here, the City's combined sewer system flows to the DWSD treatment plant for disposal and treatment.

**THE CITY'S METHODOLOGY FOR IMPOSING STORMWATER DRAINAGE CHARGES FORCES A SMALL SUBSET OF ITS NONRESIDENTIAL PROPERTY OWNERS TO FINANCE A GROSSLY DISPROPORTIONAL AMOUNT OF THE CITY'S PURPORTED COST OF STORMWATER MANAGEMENT AND DISPOSAL**

24.     DWSD purportedly imposes Drainage Charge in order to recover the cost of treatment and disposal of stormwater on a monthly basis.

25.     The process for determining the Drainage Charges involves six steps.  *See* Exhibit B, November 13, 2103 Foster Group Memorandum, which describes the process by which the DWSD Drainage Charges were computed for 2013-2014.

26.     Initially, DWSD calculates the percentage of the total combined sewer flows it treats that is attributable to stormwater, as opposed to sanitary sewage or infiltration waters.  For 2013-2014, the City determined that stormwater constituted 28% of the total treated flow.  *Id.*

27.     DWSD then determines the total revenue it needs to obtain from the City's customers in order to cover all of its sewer operations.  For 2013-2014, this amount was $203 Million. *Id.*

28.     Next, DWSD determines the portion of the total revenue requirement that will be recovered via Drainage Charges.  Here, the "Stormwater Revenue Requirement" includes 28% of the total cost of collection, treatment, and disposal of the total flow, 100% of the total capital and operating costs of CSO facilities,[1] and a pro-rata allocation of a "look back" adjustment. In its 2013-

---

[1]     "CSO" means combined sewer overflows.  Most of the time, combined sewer systems transport all of their sanitary sewage and stormwater to a sewage treatment plant, where it is treated and then discharged to a water body.  During periods of heavy rainfall or snowmelt, however, the sanitary sewage and stormwater flow rate in a combined sewer system can exceed the capacity of the sewer system or treatment plant.  For this reason, combined sewer systems were designed to overflow occasionally and discharge excess sanitary sewage and stormwater directly into nearby streams, rivers, or other water bodies.  Historically, combined sewer overflows ("CSOs") were among the major causes of beach closings and other water quality impairments.

2014 calculation, DWSD determined that the total stormwater revenue requirement applicable to City customers was approximately $95 million for that fiscal year.

29.     DWSD then allocates responsibility for the stormwater revenue requirement to the "major customer classes," which are defined as: (1) Residential, (2) Non-residential, and (3) State & County Classes. *Id.*

30.     The City has approximately 89,343 acres. *Id.* Of this total number of acres, 46,892 acres are designated as residential. *Id.* In its 2013-2014 calculation, DWSD allocated approximately $43 Million of the Stormwater Revenue Requirement to the Residential class, and based upon DWSD's rate methodology, 217,100 residential customer accounts were charged approximately $16.60 *per account per month* to meet the Residential class's allocation of the Stormwater Revenue Requirement. *Id.*

31.     Out of the City's 89,343 acres, approximately 41,237 acres are designated as "Commercial" or "Non-residential." *Id.* In the 2013-2014 calculation, DWSD allocated approximately $50 Million of the Stormwater Revenue Requirement to the Non-residential Subset. *Id.* However, based upon DWSD's rate methodology, which charges certain Non-residential customers – i.e., the owners of the Per-Acre Properties -- on a *per acre* basis, only 12,000 acres of the 41,237 acres were actually charged in order to meet the Non-residential class's allocation of the Stormwater Revenue Requirement. *Id.* This means that (for some reason) DWSD is allocating a $50 Million revenue requirement against only 12,000 Non-residential acres—even though there are actually 41,237 Non-residential acres in the City. *Id.*

32.     Based upon DWSD's calculations, the 12,000 Non-residential acres are assessed a base cost of $350.80 per acre. *Id.* DWSD then adjusts the base cost by factoring in an "average impervious factor" of 48% to yield a "per impervious acre" unit charge of $719.59 per month for the 12,000 Non-Residential acres being billed on this acreage basis. *Id.* DWSD then multiplies the "per impervious acre" unit charge of $719.59 by the estimated "average imperviousness" of the individual properties being charged in order to determine the per acre unit cost to be charged to members of the Non-residential Subset. *Id.* DWSD's methodology establishes 5 classes of "average imperviousness" based upon surveys taken of the Non-residential properties. *Id.* Once the "average

- 7 -

imperviousness" factor is calculated, the majority of owners of these 12,000 Non-residential acres are being disproportionately charged an average of $518.11/per acre for their share of the Stormwater Revenue Requirement. *Id.*

33.     The third "class" consists of the purported 1,214 acres owned by the State and County. *Id.* DWSD charges the State and County only $113.85/acre as their portion of the Stormwater Revenue Requirement. *Id.* The per-acre amounts actually paid by the State and County are even lower, because the City has grossly underestimated the number of acres encompassed by State and County highways in the City.

34.     DWSD has imposed—and plans to continue to impose—a disproportionate amount of the Drainage Charge upon a particularized and narrow subset of non-residential properties that represent only a fraction of the Non-residential Customer class.

35.     Specifically, out of a total of 89,343 acres in the entire City, with 41,237 acres designated as "non-residential," only approximately 12,000 commercial acres are subject to DWSD's "per acre" billing practice, and the owners of these acres, like Plaintiffs, bear a disproportionate cost allocation of the DWSD's Stormwater Revenue Requirement. Other non-residential properties are charged a monthly fee which ranges from $18.11 per month to $169.55 per month and is nonsensically based upon the size of the water pipes that service those properties.

36.     The City's method of imposing these Drainage Charges leads to grossly disparate Charges for similarly situated non-residential properties. A one acre parcel which incurs the Per-Acre Charge is charged a "standard rate" of $565.17 per month while an identical parcel which the City has not imposed the Per Acre Charge but rather has imposed a charge based upon the water meter size can pay as low as $18.11 per month. The owners of the Per-Acre Properties therefore pay up to 31 times as much per month as similarly situated non-residential property owners.

37.     The Drainage Charge is being used to fund costs for services which provide a benefit to the City and *all* of its citizens, whether commercial or residential. In addition to paying to dispose of stormwater, the Drainage Charge also finances 100% of the capital and operating expenses of the City's CSO facilities, which exceed $36 million per year.

38.     The portion of the Drainage Charge allocated to the Per-Acre Properties does not correspond to the benefits conferred upon this class for at least three reasons.  First, the revenues being derived from the Per-Acre Drainage Charges are clearly in excess of the direct and indirect costs of the current "use" of the stormwater disposal services by the narrow subset of non-residential properties paying those exactions – i.e., the owners of the Per-Acre Properties.

39.     Second, stormwater disposal services do not confer a unique benefit upon Plaintiffs or the other similarly situated non-residential property owners.  Stormwater collects on land, roads and other physical surfaces, and the runoff enters the combined sewer system through catch-basins and other collection devices.  Indeed, the stormwater collected in a combined sewer system are not "used" in any meaningful sense by any particular landowner or user.

40.     Third, any "benefit" of stormwater disposal conferred on the City's property owners is no different than the benefit conferred on the general public.  Storm water systems help prevent erosion, collect contaminated water for cleansing, keep roadways from flooding, and prevent the formation of standing pools of stagnant water.  The benefits resulting from this management are shared by nearly every member of the public.

41.     DWSD's use of the revenues generated by the Per-Acre Drainage Charge assessed against only the owners of 12,000 of the City's 41,000 non-residential acres to pay for stormwater disposal has the effect of forcing one subset of the citizenry to bear a disproportionate amount of the costs of a public service, even though there are other "users" of those services and even though the services benefit the general public.

## CLASS ALLEGATIONS

42.     Plaintiffs bring this action as a class action, pursuant to MCR 3.501, individually and on behalf of a proposed class consisting of the owners of the 12,000 commercial acres that are subject to DWSD's "per acre" billing practice which have incurred and/or paid the Per Acre Drainage Charge during the relevant class periods, excluding the plaintiff in Case No. 14-011369-CB.

43.     The members of the Class are so numerous that joinder of all members is impracticable.

- 9 -

44.     Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs are members of the Class they seek to represent, and Plaintiffs were injured by the same wrongful conduct that injured the other members of the Class.

45.     The City has acted wrongfully in the same basic manner as to the entire class.

46.     There are questions of law and fact common to all Class Members that predominate over any questions, which, if they exist, affect only individual Class Members, including:

     a.    whether the Per Acre Drainage Charge is a tax;

     b.    whether the Per Acre Drainage Charge violates the Headlee Amendment;

     c.    whether the Per Acre Drainage Charge violates Equal Protection Guarantees in the U.S. and Michigan Constitutions;

     d.    whether the Per Acre Drainage Charge violates 42 U.S. Code § 1983;

     e.    whether the Per Acre Drainage Charge violates the City's Charter Article 7, Chapter 12, § 7-1202;

     f.    whether the Per Acre Drainage Charge is "unreasonable,"

     g.    whether the Per Acre Drainage Charge violates MCL 141.91; and

     h.    whether the City has been unjustly enriched by collecting the Per Acre Drainage Charge.

47.     Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have no interests antagonistic to those of the Class. Plaintiffs are committed to the vigorous prosecution of this action, and have retained competent and experienced counsel to prosecute this action.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The prosecution of separate actions would create a risk of inconsistent or varying adjudications. Furthermore, the prosecution of separate actions would substantially impair and impede the ability of individual class members to protect their interests. Plaintiffs anticipate no difficulty in the management of this action as a class action.

- 10 -

## COUNT I
## <u>VIOLATION OF THE HEADLEE AMENDMENT</u>

49.     Plaintiffs incorporate each of its preceding allegations as if fully set forth herein.

50.     The City is bound by the Michigan Constitution of 1963, including those portions commonly known as the Headlee Amendment.

51.     In particular, the City may not disguise a tax as a fee under Article 9, Section 31 of the Michigan Constitution of 1963, which provides:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const. 1963, art. 9, § 31.]

52.     The Per-Acre Drainage Charge in a disguised tax and is intended to avoid the obligations of the Headlee Amendment, including the requirement that the Per-Acre Drainage Charge, as taxes, be approved by a majority of the electorate.

53.     The Per-Acre Drainage Charge has all relevant indicia of a tax:

    a.     It has no relation to any service or benefit actually received by the taxpayer;

    b.     The amount of the Per-Acre Drainage Charge is disproportionate to the cost incurred by the City in providing stormwater management services;

    c.     The Per-Acre Drainage Charge is designed to generate revenue—and in fact generates revenue for the City that exceeds the City's actual cost of providing stormwater drainage services to Plaintiffs and the Class by millions of dollars (the "Per Acre Drainage Overcharges");

    d.     The payers of the Per-Acre Drainage Charge benefit in no manner distinct from any other taxpayer or the general public;

    e.     Payment of the Per-Acre Drainage Charge is not discretionary, but actually or effectively mandatory;

- 11 -

     f.     Various other indicia of a tax described in *Bolt v. City of Lansing* are present.[2]

54.     As a direct and proximate result of the City's implementation of the Per-Acre Drainage Charge, Plaintiffs and the Class have been harmed.

WHEREFORE, Plaintiffs seek an injunction prohibiting the City from imposing the Per-Acre Drainage Charges, and further seek damages in the form of a refund of all amounts to which they and the Class are entitled to under this claim, including attorneys' fees and costs as allowed by Article 9, Section 32 of the Michigan Constitution of 1963 and MCL 600.308a.

## COUNT II
## VIOLATION OF EQUAL PROTECTION GUARANTEES AND 42 U.S.C. § 1983

55.     Plaintiffs incorporate each of the preceding allegations as if fully set forth herein.

56.     The City's practice of imposing the Per-Acre Drainage Charge only upon Plaintiffs and the other Per-Acre Properties is a constitutionally improper classification which violates Federal and State equal protection guarantees in at least two ways. First, there is no natural distinguishing characteristic between the 12,000 acres that are subject to the Per-Acre Drainage Charge and the 29,237 acres that are not subject to the Per-Acre Drainage Charge. Thus, Plaintiffs and the Class are irrationally being charged differently than the similarly situated owners of the 29,237 acres of commercial property that are not being assessed the Drainage Charge.

57.     The manner in which the Per-Acre Drainage Charge is imposed upon commercial properties unduly burdens Plaintiffs and the Class, and puts all Class members at a distinct financial disadvantage as compared to the owners of the 29,237 non-residential property acres which are not being charged in the same manner. Thus, Plaintiffs and the Class are financing the entire portion of DWSD's Stormwater Revenue Requirement (approximately $50 Million) for non-residential properties.

58.     Additionally, the varying rates of the Per-Acre Drainage Charge also violate equal protection guarantees. Here, the majority of commercial properties within the Class are being charged a rate of $518.11 per acre per month—which is nearly five times the amount being charged

---

[2]     Pursuant to MCR 2.112(M), Plaintiffs identifies subparts (a) through (f) of Paragraph 52 as "factual questions that are anticipated to require resolution by the Court."

to the State of Michigan and Wayne County, entities who are similarly situated to Plaintiffs and the Class, as the same "impervious factors" apply—but for some reason, DWSD only charges the State and County $113.85 per acre, per month. Thus, Plaintiffs and the Class are being charged at a highly inflated and disparate rate as compared to similarly situated owners of impervious property in Detroit.

59.     There is no legitimate governmental purpose being served through the City charging Plaintiffs and the Class a higher rate than it charges the State and County.

60.     42 U.S.C § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

61.     The City has violated 42 U.S.C § 1983 by imposing the Per-Acre Drainage Charge upon Plaintiffs and the Class in violation of their constitutional equal protection guarantees.

62.     Plaintiffs and the Class have been financially harmed as a result of the City's violation of their constitutional equal protection guarantees and 42 U.S.C. § 1983.

WHEREFORE, the City should be required to disgorge the revenues attributable to the Per Acre Drainage Charges imposed or collected by the City between July 18, 2013 and the date of the filing of this action and during the pendency of this action, and refund all Per Acre Drainage Charges it has collected to Plaintiffs and the Class.

## COUNT III
## UNJUST ENRICHMENT – CHARTER VIOLATION

63.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

64.     § 7-1202 of the City's Charter requires that DWSD establish equitable water, drainage and sewerage service rates.

65.     The City has exceeded the authority stated in its Charter, § 7-1202, by imposing an inequitable drainage rate—the Per Acre Drainage Charge—upon Plaintiffs and the Class.

- 13 -

66.     As a direct and proximate result of the City's improper conduct, the City has collected millions of dollars to which it is not entitled.  By paying the Per Acre Drainage Overcharges, Plaintiffs and the Class have conferred a benefit upon on the City.

67.     The City has been unjustly enriched because it received Per Acre Drainage Overcharges to which it was not entitled, and it would be unfair for the City to retain the Per Acre Drainage Overcharges under the circumstances.

68.     The City should be required to disgorge the amounts by which it has been unjustly enriched.

WHEREFORE, the City should be required to disgorge the revenues attributable to the Per Acre Drainage Charges imposed or collected by the City between July 18, 2013 and the date of the filing of this action and during the pendency of this action, and refund all Per Acre Drainage Charges it has collected to Plaintiffs and the Class.

**COUNT IV**
**UNJUST ENRICHMENT – UNREASONABLE SEWER RATES**

69.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

70.     Even if the Per Acre Charges are not taxes, they must still be "reasonable." *Mapleview Estates v. City of Brown City*, 258 Mich. App. 412 (2003).

71.     The Per Acre Drainage Charge is arbitrary, capricious and unreasonable.

72.     As a direct and proximate result of the City's improper conduct, the City has collected millions of dollars to which it is not entitled.  By paying the Per Acre Drainage Overcharges, Plaintiffs and the Class have conferred a benefit upon on the City.

73.     The City has been unjustly enriched because it received Per Acre Drainage Overcharges to which it was not entitled, and it would be unfair for the City to retain the Per Acre Drainage Overcharges under the circumstances.

74.     The City should be required to disgorge the amounts by which it has been unjustly enriched.

WHEREFORE, the City should be required to disgorge the revenues attributable to the Per Acre Drainage Charges imposed or collected by the City between July 18, 2013 and the date of the

- 14 -

filing of this action and during the pendency of this action and refund all Per Acre Drainage Charges it has collected to Plaintiffs and the Class.

## COUNT V
## UNJUST ENRICHMENT – VIOLATION OF MCL 141.91

75.     Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

76.     MCL 141.91 provides:

Sec. 1.  Except as otherwise provided by law and notwithstanding any provision of its charter, a city or village shall not impose, levy or collect a tax, other than an ad valorem property tax, on any subject of taxation, unless the tax was being imposed by the city or village on January 1, 1964. [emphasis added].

77.     The City has violated MCL 141.91 by imposing and collecting the Per Acre Drainage Charges.  The Per Acre Drainage Charge is a tax that is not an ad valorem property tax and it was first imposed after January 1, 1964.

78.     As a direct and proximate result of the City's improper conduct, the City has collected millions of dollars to which it is not entitled.  By paying the Per Acre Drainage Overcharges, Plaintiffs and the Class have conferred a benefit upon on the City.

79.     The City has been unjustly enriched because it received Per Acre Drainage Overcharges to which it was not entitled, and it would be unfair for the City to retain the Per Acre Drainage Overcharges under the circumstances.

80.     The City should be required to disgorge the amounts by which it has been unjustly enriched.

WHEREFORE, the City should be required to disgorge the revenues attributable to the Per Acre Drainage Charges imposed or collected by the City between July 18, 2013 and the date of the filing of this action and during the pendency of this action, and refund all Per Acre Drainage Charges it has collected to Plaintiffs and the Class.

## COUNT VI
## DECLARATORY JUDGMENT INVALIDATING LIENS

81.     Plaintiffs incorporate each of its preceding allegations as if fully set forth herein.

- 15 -

82.     Pursuant to Michigan law and City's ordinances, unpaid Drainage Charges may become a lien against the property of certain members of the Class. If left unpaid, the Charges are transferred to the tax roll of the property.

83.     The City may claim liens against the properties owned by Plaintiffs and the Class for unpaid Per-Acre Charges.

WHEREFORE, because the Per-Acre Drainage Charges are unconstitutional and unlawful, the Court should enter an order invalidating any municipal water or sewer liens or associated tax liens which have been imposed, or which may become imposed, against properties arising out of or relating to the Per-Acre Drainage Charges.

**PRAYER FOR RELIEF**

Plaintiffs request that the Court grant the following relief:

A.     Certify this action to be a proper class action with Plaintiffs certified as Class Representatives and Kickham Hanley PLLC designated as Class Counsel;

B.     With respect to Count I, define the Class to include the owners of the 12,000 commercial acres that are subject to DWSD's "per acre" billing practice which have incurred and/or paid the Per Acre Drainage Charge at any time in the one year preceding the filing of this lawsuit or which incur and/or pay the Per Acre Drainage Charge during the pendency of this action;

C.     With respect to Count II define the Class to include the owners of the 12,000 commercial acres that are subject to DWSD's "per acre" billing practice which have incurred and/or paid the Per Acre Drainage Charge between July 18, 2013 and the date of the filing of this action or which incur and/or pay the Per Acre Drainage Charge during the pendency of this action;

D.     With respect to Counts III, IV and V, define the Class to include the owners of the 12,000 commercial acres that are subject to DWSD's "per acre" billing practice which have incurred and/or paid the Per Acre Drainage Charge between July 18, 2013 and the date of the filing of this action or which incur and/or pay the Per Acre Drainage Charge during the pendency of this action;

E.   With respect to Count VI define the Class to include the owners of the 12,000 commercial acres that are subject to DWSD's "per acre" billing practice which have incurred and/or paid the Per Acre Drainage Charge between July 18, 2013 and the date of the filing of this action or which pay the Per Acre Drainage Charge during the pendency of this action;

F.   With respect to Count I, enter judgment in favor of Plaintiffs and the Class and against the City, and order and direct the City to disgorge and refund all Per Acre Drainage Overcharges collected, and order the City to pay into a common fund for the benefit of Plaintiffs and all other members of the Class the total amount of Per Acre Drainage Overcharges to which Plaintiffs and the Class are entitled;

G.   With respect to Count II, enter judgment in favor of Plaintiffs and the Class and against the City, and order and direct the City to disgorge and refund all Per Acre Drainage Overcharges collected, and order the City to pay into a common fund for the benefit of Plaintiffs and all other members of the Class the total amount of Per Acre Drainage Overcharges to which Plaintiffs and the Class are entitled;

H.   With respect to Counts III through V, enter judgment in favor of Plaintiffs and the Class and against the City, and order and direct the City to disgorge and refund all Per Acre Drainage Overcharges collected, and order the City to pay into a common fund for the benefit of Plaintiffs and all other members of the Class the total amount of Per Acre Drainage Overcharges to which Plaintiffs and the Class are entitled;

I.   Appoint a Trustee to seize, manage and distribute in an orderly manner the common fund thus established;

J.   Find and declare that the Per-Acre Drainage Charge violates the Headlee Amendment and permanently enjoin the City from imposing or collecting it;

K.   Find and declare that the Per-Acre Drainage Charge violates Equal Protection guarantees, the City's Charter § 7-1202 and 42 U.S.C. § 1983 and permanently enjoin the City from imposing or collecting it;

- 17 -

L.   Find and declare that the Per Acre Drainage Charge is "unreasonable" and violates MCL 141.91 and permanently enjoin the City from imposing or collecting it;

M.   Enter an order invalidating any municipal water lien or associated tax liens which have been imposed, or which may become imposed, against the properties of all class members arising out of or relating to the Per Acre Drainage Charges.

N.   Award Plaintiffs and the Class the costs and expenses incurred in this action, including reasonable attorneys', accountants', and experts' fees; and

O.   Grant any other appropriate relief.


KICKHAM HANLEY PLLC

By: /s/ Gregory D. Hanley
     Gregory D. Hanley (P51204)
     Jamie Warrow (P61521)
     Edward F. Kickham Jr. (P70332)
     32121 Woodward Avenue, Suite 300
     Royal Oak, Michigan 48073
     248-544-1500
Date: September 10, 2015          Attorneys for Plaintiffs
KH143480


## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2015 I electronically filed the *Plaintiffs' First Amended Class Action Complaint* with the Clerk of the Court using the electronic filing system which will send notification.

/s/ Kim Plets
Kim Plets

- 18 -

15-010165-CB
FILED IN MY OFFICE
WAYNE COUNTY CLERK
9/10/2015 1:42:37 PM
CATHY M. GARRETT

# EXHIBIT - A

**CITY OF DETROIT SEWAGE, DRAINAGE, INDUSTRIAL
WASTE CONTROL AND SURCHARGE RATES**

Effective on all bills rendered on or after August 1, 2014

| **SEWAGE RATES** | **Rate** |
|---|---|
| Sewage Disposal Rate per 1,000 cu. ft: | $46.26 |

| **SERVICE CHARGE** | **Charge** |
|---|---|
| Based on number of months in the Billing period | |
| Per bill: | $ 5.47 |

### SERVICE CHARGE

Monthly Drainage Charge based on meter size

| **Residential** | | | **Non-Residential** | |
|---|---|---|---|---|
| **Meter Size** | **Drainage Charge** | | **Meter Size** | **Drainage Charge** |
| 5/8 inch | $18.11 | | 5/8 inch | $ 18.11 |
| 3/4 inch | 18.11 | | 3/4 inch | 18.11 |
| 1 inch | 18.11 | | 1 inch | 18.11 |
| 1 ½ inch | 18.11 | | 1 ½ inch | 169.55 |
| 2 inch | 18.11 | | 2 inch | 169.55 |
| 3 inch | 169.55 | | 3 inch | 169.55 |
| 4-48 inch | 169.55 | | 4-48 inch | 169.55 |

Minimum Sewage Charge............ $ 23.58 per month*

### Non-Residential Drainage Rate per Acre per Month

| | **Standard Rate\*** | **Surveyed** | **Imperviousness** | | **Rate** |
|---|---|---|---|---|---|
| | **72%** | **10/24%** | **25/49%** | **50/74%** | **75/100%** |
| Charge | $565.17 | $133.44 | $290.43 | $486.66 | $886.83 |

*The standard rate of $565.17 per acre per month applies to all non-residential property that has not had a property imperviousness survey completed, submitted to and approved by the Detroit Water and Sewerage Department. A minimum charge of $23.58 applies to non-residential property.

15-010165-CB
FILED IN MY OFFICE
WAYNE COUNTY CLERK
9/10/2015 1:42:37 PM
CATHY M. GARRETT

# EXHIBIT - B

# ᴛ**F**ɢ
## THE FOSTER GROUP

| | |
|---|---|
| P.O. BOX 26282<br>LEAWOOD, KS 66225<br>TEL: (913) 345-1410<br>FAX: (913) 345-1640 | THE FOSTER GROUP, LLC<br>BART FOSTER, PRESIDENT<br>CELL: (913) 530-6240<br>BFOSTER@FOSTERGROUPLLC.COM |

MEMORANDUM

Detroit Retail Stormwater Rates                                November 22, 2013

To:    Bill Wolfson, Raphael Chirolla

From:  Bart Foster

You have asked for a brief documentation describing the process by which the DWSD stormwater drainage charges are computed for retail customers in the City of Detroit. The attached table illustrates the calculation of the FY 2013-14 charges, and is briefly described herein. The stormwater rate methodology was originally established in the early 1980s and remains intact today. While minor adjustments to the underlying allocation factors have been made periodically, no material changes to the methodology have been implemented. It is our understanding that the entire methodology is in the process of review for potential changes in the FY 2014-15 rates.

The process for determining the stormwater rates and charges basically consists of six calculation steps:

Step 1 – Determine relative stormwater volumes as a percentage of the total Detroit retail class allocation volume. This is illustrated on Lines 1 through 6. For the FY 2013-14 rates, the flow modeling and flow balancing efforts indicated that 28% of the flow from the Detroit class was related to storm flows.

Step 2 – Determine the overall revenue requirement allocable to the Detroit retail class. As shown on Lines 7 through 9, the sewer cost of service study assigned approximately $203 million to the class for FY 2013-14. *Note – this does not include amounts that are recovered from "per bill" charges, as they do not affect the calculation of stormwater or commodity charges.*

Step 3 – Determine the relative portion of the Detroit revenue requirement that should be recovered by stormwater charges.   See Lines 10 through 13.   The stormwater rate methodology assigns "regular" treatment and collection costs proportional to the allocation volume.  So 28% of these costs are allocated to the stormwater rates. The methodology also assigns 100% of the costs related to the CSO facilities to stormwater rates.  Finally, the stormwater rate requirement picks up a pro-rata allocation of the Look-Back Adjustment.

Detroit Retail Stormwater Rates                                November 22, 2013
                                                                        Page 2

Step 4 – Allocate the stormwater revenue requirement to major customer classes. See Lines 14 through 18. The methodology uses property use statistics to perform this allocation on the basis of total impervious acres in the City. Approximately $50 million is assigned to be recovered through "per acre" charges. Note – the Look-Back amounts are not allocated to the State and County Road accounts.

Step 5 – Determine effective unit costs. See Lines 19 through 23. The unit costs for the residential and State and County Road accounts simply become the proposed rates, as shown on Line 20. The "per acre" charges require additional adjustments. Based on information from the billing system, there are approximately 12,000 acres being billed on an acreage basis, with an average imperviousness of 48.8%. This yields a "per impervious acre" unit charge of $719.59 per month.

Step 6 – Adjust unit costs by average impervious factors. The methodology establishes 5 classes of "average imperviousness" based on surveys of individual properties. These average impervious factors are applied to the standard unit cost to produce the monthly charges shown on Lines 24 through 28.


We trust that this information provides an executive summary description of the process. We are prepared to discuss this matter further at your convenience.

Illustration of City of Detroit Stormater Drainage Charge Design - "Net" Rates with LB

| | | | Total | Allocation | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Residential | Non-Res | State & Co |
| | City of Detroit Flow Volumes - Mcf | | | | | |
| 1 | Sanitary | | 3,242,500 | | | |
| 2 | Dry Weather Infiltration | | 5,046,125 | | | |
| 3 | Net Wet Weather Inflow * | | 3,257,813 | | | |
| 4 | Total | | 11,546,438 | | | |
| 5 | Wet Weather (Storm) % | | 28% | | | |
| 6 | * Reflects overflow credit % of: | | 15% | | | |
| | City of Detroit Revenue Requirement - $ | | | | | |
| 7 | Original Collection, Treatment, & Disposal | | 166,542,400 | | | |
| 8 | CSO Facilities | | 36,927,400 | | | |
| 9 | Total | | 203,469,800 | | | |
| | Stormwater Revenue Requirement - $ | | | | | |
| 10 | Orig Collection, Treatment, & Disposal | 28% | 46,989,700 | | | |
| 11 | CSO Facilities | 100% | 36,927,400 | | | |
| 12 | Net Look-Back Adjustment | | 11,500,000 | | | |
| 13 | Total | | 95,417,100 | | | |
| 14 | Assigned Acres | | 89,343 | 46,892 | 41,237 | 1,214 |
| 15 | Impervious Factor | | 51% | 44% | 58% | 75% |
| 16 | Assigned Impervious Acres | | 45,517 | 20,573 | 24,033 | 911 |
| 17 | Allocation Factor (a) | | | 45.2% | 52.8% | 1.7% |
| 18 | Allocated Revenue Requirement (a) | | 95,417,100 | 43,243,101 | 50,515,369 | 1,658,630 |
| 19 | Total Billing Units | | | 217,100 | 12,000 | 1,214 |
| | Units | | | accts | acres | acres |
| 20 | Cost per Unit | | | 16.60 | 350.80 | 113.85 |
| | Units | | | per acct | per acre | per acre |
| 21 | Avg Impervious Factor | | | | 0.488 | |
| 22 | Effective Billing Units | | | | 5,850 | |
| | Units | | | | imp acres | |
| 23 | Cost per Unit | | | | 719.59 | |
| | Units | | | | per imp acre | |

| | Non-Residential Acreage Charges | Average Imp Factor | | Unit Cost per Imp Acre | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 24 | Class 1 | 0.170 | x | 719.59 | = | 122.33 | per acre |
| 25 | Class 2 | 0.370 | x | 719.59 | = | 266.25 | per acre |
| 26 | Class 3 | 0.620 | x | 719.59 | = | 446.15 | per acre |
| 27 | Class 4 (Standard) | 0.720 | x | 719.59 | = | 518.11 | per acre |
| 28 | Class 5 | 0.875 | x | 719.59 | = | 629.64 | per acre |

(a) Look-Back not allocated to State and County ROW

**TFG**

THE FOSTER GROUP

ATTORNEYS AND COUNSELORS
# KICKHAM HANLEY PLLC
32121 WOODWARD AVENUE, SUITE 300
ROYAL OAK, MI 48073
(248) 544-1500
FAX: (248) 544-1501

JAMIE K. WARROW
(248) 544-1500
JWARROW@KICKHAMHANLEY.COM

September 11, 2015
*VIA HAND DELIVERY*

Janice M. Winfrey
City of Detroit City Clerk
Coleman A. Young Municipal Center
2 Woodward Avenue
Detroit, MI 48226

>       **Re:**    ***Michigan Warehousing Group, LLC v City of Detroit***
>                  ***Wayne County Circuit Court Case No. 15-010165-CB***

Dear Ms. Winfrey:

Enclosed please find Plaintiffs' First Amended Complaint, Summons and Complaint, and Plaintiffs' First Requests for Admissions, First Set of Interrogatories, and First Discovery Requests to Defendant City of Detroit, with respect to the above-entitled cause of action.

Very truly yours,

Jamie Warrow

JKW/kap
Enclosure
KH143490